CRAWLEY, Judge,
dissenting.
When one reasonable view of the evidence supports the trial court’s judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome. Ex parte Veazey, 637 So.2d 1348 (Ala.1993). I respectfully dissent, because I believe the trial judge heard evidence from which he could have determined that the test of legal and medical causation was not met.
First of all, “[ejxpert opinions in workmen’s compensation eases are not binding on the trial court, even when uncontroverted.” Neely Track Line, Inc. v. Jones, 624 So.2d 1385, 1388 (Ala.Civ.App.1993). “[T]he weight and credibility to be attributed to an expert witness is for the trier of fact.” Clark Lumber Co. v. Thornton, 360 So.2d 1019, 1021 (Ala.Civ.App.1978). From the documentary evidence introduced at trial, the trial court could have found that Floyd’s prior history of heart disease, hypertension, and heavy smoking — rather than his having tarped a loaded truck — were the cause of death. From a description of the process of tarping the loads given by Allen J. Gilbert, the fellow employee who helped Floyd cover the truck, the trial court could have concluded that the activity in which Floyd was engaged just prior to his death was not particularly strenuous.
Moreover, even if the trial court accepted the medical testimony in this case, it could still conclude that Floyd’s death was not work-related. Responding to a hypothetical question whether, assuming certain facts as related by Floyd’s witnesses, Floyd’s “death was caused or contributed to by his employment,” Dr. Morris testified as follows:
“Well, my opinion would be that it probably did have to do with his death, but I have to emphasize a few assumptions there. The death certificate says myocardial infarction, but that’s — he could have had a severe rupture. I will say that if he was having chest pains that was representing a heart attack and he continued to work that the work probably would contribute especially to his chance of receiving arrhythmia which would be the immediate cause of death. ”
(Emphasis added.) The foregoing testimony indicates that Dr. Morris’s opinion as to causation was dependent upon Floyd’s “having chest pains ... and continu[ing] to work.” However, Floyd’s wife was the only witness who testified that Floyd complained of chest pains on the day of his death. In contrast, Allen J. Gilbert, the fellow employee who helped Floyd tarp his load, testified that Floyd made no complaints at all and “did not look or act sick.”
Linda Burns, the company dispatcher, also talked to Floyd several times on the day of his death. She testified that, although Floyd complained of not feeling well, he said nothing about chest pains. When Ms. Burns asked Floyd if he “need[ed] to go to a doctor,” he said, “[N]o, it’s not anything that can’t wait.”
Although the majority says that Ms. Burns “testified that she did not recall speaking *96 with Floyd’s wife on the date of his death,” 671 So.2d at 93, a more accurate characterization of her testimony is that she flatly denied ever having spoken to Floyd’s wife, and flatly denied having spoken to her on the day of Floyd’s death. Faced with the conflict in the testimony between Ms. Bums and Floyd’s wife, the trial court specifically found “the testimony of Linda Bums to be credible and believable.”
Because the trial court made a credibility choice not to believe Floyd’s wife on one point, it is likely that he made a similar choice not to believe her on another point, specifically her statement that Floyd complained of chest pains on the day of his death. Given the fact that Dr. Morris’s testimony as to causation hinged upon Floyd’s “having chest pains ... and continufing] to work,” it is evident that the trial court’s denial of benefits was based upon the court’s disbelief of Floyd’s wife. This court is not in a position to say that view of the evidence is unreasonable. We should uphold the trial court’s judgment if it is based on any reasonable view of the evidence.